IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MOHAMED SANKOH | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 17-2276 |
| GOLD STREET CAPITAL FUND, *et al.*, | * | |
| | * | |
| Defendant(s). | * | |
| | ****** | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiff Mohamed Sankoh's Motion for Default Judgment, ECF No. 9. Defendants Gold Street Capital Fund LP, Money Back Taxx LLC, USA Debt Solutions LLC, and Lovet Ako have not filed a response or entered their appearance, and the time for doing so has passed. *See* Loc. R. 105.2.a. Pursuant to Local Rule 105.6, a hearing is not necessary. For the reasons stated herein, Plaintiff's Motion for Default Judgment is GRANTED.

**I.   BACKGROUND**

Plaintiff Mohamed Sankoh ("Sankoh") is a citizen of the State of Maryland and former employee of Defendants Gold Street Capital Fund, LP ("GSCF"), Money Back Taxx, LLC ("Money Back"), USA Debt Solutions, LLC ("USA Debt Solutions"), and Lovet Ako ("Ako"). ECF No. 1 at ¶ 12. GSCF is a Delaware corporation which conducts substantial business in Maryland; Money Back and USA Debt Solutions are Maryland corporations with their principal place of business in Maryland. ECF No. 1 at ¶¶ 14–15. Ako is a resident of Maryland and the sole proprietor and owner of all corporate Defendants. *Id.* at ¶¶ 16–17.

1

From around April 3 through July 18, 2017, Sankoh worked for Defendants in Silver Spring, Maryland. *Id.* at ¶ 21–23. As part of his duties, Sakoh performed a wide variety of tasks for corporate Defendants, including entering client information, amending tax forms, fixing computers, and drafting abstracts of stock-market related analysis. *Id.* Defendant Ako hired Sankoh, and supervised his work for all corporate Defendants. *Id.* at ¶¶ 24–25.

Defendants promised Sankoh an annual salary of $50,000, paid biweekly. *Id.* at ¶¶ 26–28. However, throughout Sankoh's employment, he was not been paid timely, nor did he receive all owed wages. *Id.* at ¶ 32. On or about June 23, June 26, June 27, and July 14, 2017, Sankoh complained to Defendant Ako that it was illegal to withhold earned wages. *Id.* at ¶¶ 33–34, 38, 42. On June 26, 2017, Ako gave Sankoh a check for $1,000, written on a Money Back Taxx, LLC check, and did not provide Sankoh a paystub. *Id.* at ¶¶35–37. When Sankoh again complained on July 14, 2017, that Ako's failure to pay employees was illegal, Ako stated that he did not want to pay Sankoh his owed wages. Sankoh was then escorted out of Ako's office, immediately suspended, and then terminated for complaining about unpaid wages on July 18, 2017. *Id.* at 47–48. In total, Sankoh received only $1,000 during his employment. *Id.* at ¶¶ 29–31.

On August 9, 2017, Sankoh filed claims for unpaid wages and retaliation in violation of the Maryland Wage Payment and Collection Law ("MWPCL") and the Fair Labor Standards Act ("FLSA"), asserting federal question jurisdiction. ECF No. 1. All Defendants were served on August 28, 2017. ECF Nos. 2–6. Defendants failed to enter their appearance or otherwise respond, and an Order of Default was entered on October 18, 2017. ECF No. 8. Sankoh moved for default judgment on December 5, 2017.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). For "all other cases," in which the sum is neither certain nor ascertainable through computation, Rule 55(b)(2) provides. "[T]he party must apply to the court for a default judgment . . . . The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." The entry of default judgment is a matter within the discretion of the Court. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)).

Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421). Default judgment is proper when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). In this Circuit, district courts analyzing default judgments apply the pleading standards announced in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g., Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 544 (D.Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972 at *2–*3 (D. Md. Apr. 9, 2012); *U.S. v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832 at *2–*3 (D. Md. Oct. 27, 2011); *Bogopa Serv. Corp. v. Shulga,* No. 3:08cv365, 2009 WL 1628881, at *1–2 (W.D.N.C. June 10, 2009). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied. *See, e.g., Balt. Line Handling Co.,* 771 F. Supp. 2d at 544 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

### III. ANALYSIS

#### a. Liability

Sankoh filed suit against Defendants for violations of the FLSA and MWPCL, alleging that Defendants failed to pay promptly the wages owed to him, and when he complained, Defendants fired him. The Complaint sets forth an adequate factual basis to determine liability.

A necessary precondition to establishing liability under the FLSA and MPCWL is showing that an employment relationship existed between the parties. *See Falaiye v. CCA Academic Resources, LLC,* No. PX-16-2887, 2017 WL 2537026, at *2 (D. Md. June 12, 2017)); *Coles v. Von Paris Enterprises, Inc.*, No. PJM-14-450, 2014 WL 6893861, at *3 (D. Md. Dec. 3, 2014); *Butler v. PP & G, Inc.*, No. WMN-13-43, 2013 WL 4026983, at *4 (D. Md. Aug. 6, 2013). Whether an individual or entity is an "employer" under the FLSA and MPCWL is determined by applying the "economic reality" test. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006); *Rollins v. Rollins Trucking, LLC,* No. JKB-15-3312, 2016 WL 81510, at *4 (D. Md. Jan. 7, 2016) ("[C]ourts in Maryland and in this District have applied the economic-reality test to claims arising under the MWPCL.") (citing cases). An "employer" is one who (1) has the authority to hire and fire employees; (2) supervises and controls work schedules or employment conditions; (3) determines the rate and method of payment; and (4) maintains employment records. *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 689 (D. Md. 2010). Under this test, no one factor is dispositive, and courts must consider the totality of the circumstances. *Id.*

Here, Sankoh has clearly established that Defendant Ako was an "employer" under both the FLSA and MPCWL. Sankoh avers that Ako hired him, and then dictated and supervised Sankoh's work for all corporate Defendants, including his hours and compensation. ECF No. 1

at ¶¶ 21–25. Sankoh has not, however, averred such facts as to the corporate Defendants, and his Complaint makes clear that Ako controlled Sankoh's employment at all times, regardless of the particular business involved. *See* ECF No. 1 at ¶¶ 20–49 (alleging that Ako controlled Sankoh's continued employment at Defendants, including payment of wages); *see also* ECF No. 9. The Court determines, therefore, that Ako was Sankoh's "employer" as defined by the FLSA and MPCWL, and Ako is thus the proper Defendant in this matter.

Further, Sankoh has plausibly alleged that he maintained an employment relationship with Defendant Ako. Sankoh agreed to work for Ako on the promise that Sankoh would be compensated with a $50,000 annual salary paid on a biweekly basis. ECF No. 1 at ¶¶ 20–28. Sankoh performed a variety of tasks for Ako's businesses — including drafting documents, fixing equipment, and assisting with client recruitment and intake — with the expectation of such compensation. ECF No. 1 at ¶¶ 21–23; *see also* ECF No. 9-1 at ¶¶ 3–5. Thus, Sankoh has established an employment relationship with Ako.

### 1. MWCPL (Count 1)

Sankoh alleges that Defendants violated MWCPL by failing to pay promptly wages due to him and for refusing to pay wages to which Sankoh was legally entitled. *See* ECF No. 1 at ¶¶ 50–58. The MWPCL provides that employers "shall pay each employee at least once in every 2 weeks or twice in each month," Md. Code Ann., Lab. & Empl. § 3–502(a)(1)(ii), and shall pay the employee all wages due upon termination, *id.* at § 3–505. *See Marshall v. Safeway*, 437 Md. 542, 561–62 (2014) (holding that the MWPCL generally provides an employee with a cause of action against an employer for both the failure to pay wages on time and for "the refusal of employers to pay wages lawfully due."); *Falaiye v. CCA Academic Resources, LLC*, No. PX-16-2887, 2017 WL 4098740, at *4–*5 (D. Md. Sept. 14, 2017).

The Complaint alleges that Sankoh was promised an annual salary of $50,000, to be paid in biweekly sums of $1,923.08. ECF No. 1 at ¶¶ 26–30; *see also* ECF No. 9-1 at ¶¶ 7, 9. In reality, however, Sankoh received only one payment of $1,000 for his fifteen weeks and one day of employment with Ako. ECF Nos. 1 at ¶¶ 2, 29 & 9-1 at ¶ 2. Accepting these allegations as true, Ako has violated the MWPCL by failing to pay Sankoh on a regular basis. *See* Md. Code Ann., Lab. & Empl. §§ 3–502(a)(1), 3-505(a). Default judgment as to Ako on Count One is proper. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005).

### 2. FLSA (Count Two)

Sankoh also avers that voicing his displeasure regarding unpaid and delinquent wages led to his termination, which supports a retaliation claim under the FLSA. *See* ECF No. 9 at 4; *see also* ECF No. 1 at 7. To establish a FLSA retaliation, Sankoh must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered an adverse action by the employer subsequent to or contemporaneous with the protected activity; and (3) a causal connection exists between his protected activity and the employer's adverse action. 29 U.S.C. § 215(a)(3); *Darverau v. Detecon, Inc.*, 515 F. 3d 334, 340 (4th Cir. 2008).

Here, Sankoh's allegations clearly satisfy the requirements of § 215(a)(3). Sankoh engaged in a protected activity under the FLSA when he expressed his concerns about unpaid wages to Ako, in a meeting called for that purpose. ECF No. 1 at ¶¶ 32–48; *see Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428, 439 (4th Cir. 2012). Sankoh's subsequent termination is an adverse action, *see Darveau*, 515 F.3d at 343, and Sankoh has specifically asserted that he was fired because he complained about not receiving owed wages. *See* ECF No. 1 at ¶¶ 42–48, 60–65; *see also* ECF Nos. 9 at 4–5 & 9-1 at ¶¶ 15–20. Accordingly, default judgment on Sankoh's FLSA claim is proper.

### b. Damages

Once the scope of liability is established, the Court must determine damages. To calculate damages, "the Court . . . may rely on affidavits or other evidentiary documents in the record to determine the amount of damages." *Falaiye v. CCA Academic Resources, LLC*, No. PX-16-2887, 2017 WL 4098740, at *5 (D. Md. Sept. 14, 2017) (quoting *Quiroz v. Wilhelm Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011)). In cases such as this one in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, a plaintiff must show the amount and extent of their improperly compensated work "as a matter of just and reasonable inference." *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). An employee's testimony as to his recollection of the time worked and the pay received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed. *Lopez*, 2008 WL 2227353, at *3 (citing *Donovan v. Kentwood Development Co., Inc.*, 549 F. Supp. 480, 485 (D. Md. 1982)); *see also Falaiye*, 2017 WL 4098740, at *5.

Sankoh's affidavit and supplemental exhibits support an award of unpaid wages under the MWPCL, back-pay and equal liquidated damages under the FLSA, and attorney's fees and costs under both statutes. ECF No. 1 at 7–8; *see also* ECF No. 9 at 3–8. Sankoh attests that he worked fifteen weeks and one day for Ako and is owed $13,491.78 in unpaid wages under the MWPCL. ECF Nos. 9 at & 4, 6 & 9-1 at ¶ 23. Sankoh was promised biweekly pay of $1923.08, equaling weekly pay of $ 961.54. Sankoh's owed wages, therefore, are his weekly pay of $961.54, multiplied by fifteen weeks, plus the pro-rata share for an additional day of employment, minus the amount actually paid by Defendant Ako ($1,000), for a total of

$13,560.46. That said, in the context of default judgment, this Court is bound to award no more than the damages demanded by the plaintiff's pleadings. Sankoh pled unpaid wages of $13,491.78, and so the Court limits damages for unpaid wages to that amount. *See* R. Fed. Civ. P. 54(C).[1] *See also* ECF Nos. 9 at 6 & 9-1 at ¶ 23.

Under the MWCPL, the Court, as finder of fact, may treble damages on unpaid wages when appropriate. Md. Code, Labor & Empl. §3-507.1(b); *Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 549–50 (2000). Here, Sankoh asserts that an award of treble damages, $40,475.34,[2] is warranted. ECF No. 9 at 6. Sankoh also seeks back-pay and liquidated damages under the FLSA, which allows for "payment of wages lost and an additional equal amount as liquidated damages," for retaliatory termination. *See* 29 U.S.C. § 216(b); ECF Nos. 1 at 7 & 9 at 4–5; *see also* ECF No. 9-1 at ¶ 23. Sankoh has not found comparable employment since his termination, and estimates that from the date of his firing (July 18, 2017) through the date of filing this action, he would have earned $18,269.26 from Defendant. Instead, he has earned a total of $12,113.50 through various job opportunities. *See* ECF Nos.9 at 5; 9-1 at ¶¶ 27–29; & 9-2. Sankoh thus asserts back-pay of the difference, $6,155.76, plus liquidated damages of this amount, is due under § 216(b) of the FLSA. *See* ECF Nos.9 at 5; 9-1 at ¶¶ 27–29; & 9-2.

The FLSA includes a presumption in favor of awarding successful plaintiffs liquidated or double damages. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). Liquidated damages may only be withheld if the employer presents evidence that he acted in good faith and with reasonable grounds that his actions did not violate the FLSA. *Id.*; *see also Lopez*, 2008 WL

---

[1] Sankoh calculates his owed damages by dividing his biweekly pay (1,923.08) by 2 for a weekly pay of $961.54. Sankoh then multiplies his weekly pay by "15 and 1/14 weeks," minus the amount paid ($1,000), for a total of $13,491.78. *See* ECF No. 9 at n.1; *see also id.* at 6–7.

[2] Sankoh's pleadings request treble damages of $40,475.36, which is not three times his calculated unpaid wages ($40,475.34). The Court will presume that the minor difference in totals ($0.02) is a typographical error and proceed with the correct sum, $40,475.34.

2227353, at *4. Here, the employer did not present *any* evidence, so liquidated damages are certainly warranted.

However, it is well-established in this Court that a Plaintiff is "entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *See, e.g. Falaiye*, 2017 WL 4098740, at *5; *Quiroz*, 2011 WL 5826677, at *3; *Castillo v. D & P Professional Serv., Inc.*, No. DKC-14-1992, 2015 WL 4068531, at *6 (D. Md. Jul. 2, 2015); *Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *8(D. Md. Nov. 5, 2012); *Falaiye*, 2017 WL 4098740, at *5 (quoting *Clancy*, 2012 WL 5409733, at *8). The Court will award liquidated damages here.

Because Ako has failed to defend this case, no evidence is before the court establishing the existence of a bona fide dispute. Nor has Sankoh attested to consequential damages, unless the Court construes the facts alleged regarding his difference in post-termination income as such. To the extent that Sankoh's income deficit is a consequential damage of Ako's statutory violation, it is accounted for by his damages under FLSA. Accordingly, damages shall be awarded for unpaid wages of $13,491.78 under the MWPCL, as well as back-pay and liquidated damages under the FLSA of $12,311.52. This damages award best compensates Sankoh for Defendant Ako's statutory violations. *See Clancy*, 2012 WL 5409733, at *5 ("[U]nder what is known as the 'one wrong, one recovery rule,' a party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery.") (citing *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980)); *see also Lopez*, 2008 WL 2227353, at *4.

### c. Attorney's Fees and Costs

Finally, Sankoh seeks attorney's fees and costs. *See* ECF Nos. 1 at 7 & 9 at 6–7. The FLSA mandates payment of reasonable attorney's fees and costs to prevailing plaintiffs, 29

U.S.C. § 216(b), and the MWPCL permits, but does not mandate such awards. *See e.g., Friolo v. Frankel*, 373 Md. 501, 515 (2003). "In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008) and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

The absent Defendants do not challenge Sankoh's requested attorney's fees and costs. Nonetheless, the Court must independently assess the reasonableness of the amounts requested. *See Lopez*, 2008 WL 2227353, at *5 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). This Court retains discretion in this regard, given its "superior understanding of the litigation." *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n. 18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)).

Sankoh's counsel requests the hourly rate set out in the Court's Local Rules, which is presumptively reasonable for lodestar calculations. *See* ECF No. 9-3; Loc. R. App. B. Counsel avers that a total of 15.70 hours was devoted to this case, with total attorney's fees of $3,692.50, and costs of $921.81. ECF Nos. 9 & 9-3. Counsel submits a detailed log of the time spent litigating the case and the affidavit of attorney Denise Clark affirming the veracity of the submissions. The entries in the log are generally reasonable, with the largest block of time, 8.2 hours,[3] spent drafting and editing the motion and memorandum for default judgment.

The Court notes, however, that Plaintiff's pleadings, while ultimately successful, were brief, cited few cases, and included several mathematical errors. *See supra.* Additionally, the

---

[3] The Court reached this sum by adding the total hours spent on the motion for default judgment and related exhibits. Of the approximately 8.2 hours spent on the motion for default judgment, Mr. Nwaokobia logged 7.4 hours and Mr. Greenburg 0.8. The Court also notes that although Denise Clark did not submit any hours for the motion, she signed the pleading.

pleadings as to damages are not consistent with the Complaint, and do not address three of the four Defendants. *Compare* ECF No. 1 at ¶ 30 *with* ECF Nos. 9 at 5–6 & 9-1 at ¶ 23. In the Court's view, bringing this relatively simple, uncontested matter to conclusion through the default judgment process, need not have taken 15.70 hours, particularly considering the quality of the pleadings received. *See, e.g. Flores v. City Certified Building Services, Inc.*, No. ELH-16-2135, 2016 WL 6780209, at *4–*5 (D. Md. Nov. 16, 2016). The Court will reduce the compensable hours to a total of 12.50, but will not reduce the hourly rate. Accordingly, attorney's fees are awarded in the amount of $2,847.50.[4]

Sankoh also seeks to recover the costs of this action. Specifically, he requests $921.81, to covers filing fees of $400, servicing costs of $499, and $22.81 in Westlaw legal research charges. *See* ECF No. 9-4. Under FLSA, "the costs that may be charged to losing defendants 'include those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.' " *Lopez*, 2008 WL 2227353, at *7 (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). Costs of $921.81 are also awarded.

### d. Post-Judgment Interest

"Post-judgment interest is due on awards under FLSA in accordance with 28 U.S.C. § 1961." *Clancy*, 2012 WL 5409733, at *10 (quoting *Kennedy v. A Touch of Patience Shared House., Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011)); *see also Flores v. Environmental Trust Solutions, Inc.*, No. PWG-15-3063, 2016 WL 5459106, at *4 (D. Md. Sept. 28, 2016) (awarding post-judgment interest on default judgment). Therefore, the Court will award post-judgment interest to Sankoh pursuant to 28 U.S.C. § 1961.

---

[4] The Court reduced the hours by 3.2 total, but allocated the hours among each attorney involved, respective to their work on the case.

## IV. CONCLUSION

Based on the foregoing, it is this 6th day of April, 2018, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff MOHAMED SANKOH's Motion for Default Judgment against Defendant LOVET AKO, ECF No. 9, BE, and the same hereby IS, GRANTED;

2. Plaintiff MOHAMED SANKOH's Motion for Default Judgment against Defendants GOLD STREET CAPITAL FUND, LP, MONEY BACK TAXX, LLC, and USA DEBT SOLUTIONS, LLC, is DENIED and these claims are DISMISSED;

3. MOHAMED SANKOH is awarded unpaid wages damages of $13,491.78 under the MWPCL;

4. MOHAMED SANKOH is awarded damages of $12,311.52 under the FLSA, and post-interest judgment interest on such damages shall accrue under 28 U.S.C. § 1961;

5. MOHAMED SANKOH shall receive attorney's fees of $2,847.50 and costs of $921.81; and

6. The Clerk SHALL TRANSMIT copies of this Memorandum Opinion and Order to the Defendant and counsel for the Plaintiff and CLOSE this case.

| | |
|---|---|
| 04/06/2018 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |